ROBERTSON, Justice:
Alvin Giles was convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, of the murder *121 of Bemo Carruthers and sentenced to life imprisonment in the penitentiary. Car-ruthers operated Sunlight Cleaners, a small cleaning establishment located at 506 West Pascagoula Street, Jackson, Mississippi. Between 11:30 a. m. and 12:00 Noon, on June 28, .1973, while at work, he was shot and killed in an apparent robbery attempt.
Appellant assigned these three grounds of error:
“1. The court erred in refusing to require the state to comply with the court’s order directing the production and disclosure of evidence.
2. The verdict of the jury was not supported by competent or reliable evidence in that the prosecution failed to exclude all other reasonable hypotheses other than the defendant’s guilt though all evidence was circumstantial.
3. The court erred in refusing to suppress evidence illegally seized from defendant.”
About 11:45 A. M., June 28, 1973, Stub-blefield and Bounds of the Jackson Police Department found Carruthers lying on his back behind the counter of Sunlight Cleaners. He had been killed with two shots from a 38-caliber pistol. His belt was found on the floor near his body, along with a keyring containing 15 or 20 keys. A half-smoked cigar and two 38-caliber slugs were also found on the floor near his body.
Alvin Giles, a 16-year-old male, lived with his mother at 524 Lynch Street. About 8:30 A. M. on June 28, 1973, Giles went next door to check with Buster Allen, a blind neighbor, to see if he needed anything from the grocery store. Giles frequently ran errands for Allen, for which Allen paid him. Giles asked if he could use the bathroom but stayed in it so long that Allen became suspicious.
When Giles came out of the bathroom, Allen asked him to stay and visit but Giles refused and left very abruptly. Allen immediately checked the dresser drawer next to the bathroom where he always kept his 38-caliber pistol and found it missing. He called Mrs. Giles, Alvin’s mother, and told her that Alvin had taken his pistol. He then called the police and reported that his pistol had been stolen by Alvin Giles.
In the meantime, Giles had returned home, changed clothes and left for Blackburn Junior High School to run track and shoot basketball. At the trial, Giles testified that he had gone by Sunlight Cleaners that morning, that he shot basketball until about 11:30 or 12:00 Noon, and then went behind the school where he met "a buddy of mine, Jerry Washington”, who gave Giles a billfold to keep for him. Giles stated that he had seen Jerry at Blackburn school about 20 times, that it was customary for Washington and other boys to gamble on the track behind the junior high school, and that Washington had given him billfolds to keep for him while he was gambling on four or five previous occasions. In each instance, Giles would return the billfold to Washington later.
On direct examination, Giles stated:
“Q On those occasions, when he’d give you this wallet, what would you do with it?
A I’d open it up and look for his I.D. card.
Q Did you look for it at this time?
A No.”
On cross-examination, Giles testified:
“No. When I got it, I just opened it up and looked in it, but I didn’t count the money in the billfold.”
Giles further testified that when he got ready to leave he saw Washington, and Washington asked him to keep the wallet for him and to meet him on Valley Street at “the place where we’d been going to before.” Giles had known Jerry Washington for about four years, having become ac *122 quainted with him when they went to school together in Yazoo City.
While investigating at the Sunlight Cleaners, Sergeant Barfield of the Jackson Police Department learned from the department that Allen had reported his 38-caliber pistol stolen by Giles. Based on this information and the fact that two 38-caliber slugs were found near the body of the decedent, Sergeants Barfield and Taylor went to Giles’ home, which was about 300 yards from the cleaners.
Giles agreed to go to police headquarters with them to take a trace metal detection test. As Giles walked down the corridor of the jail ahead of Sgt. Barfield, Barfield noticed a large bulge in his right rear pocket. He removed the bulge, which turned out to be two billfolds.
The first billfold that Barfield opened contained a driver’s license, an Aetna Insurance card, a First National Bank checking account card, a Super D Drug Store senior citizen’s card, and a social security card, all in the name of “Bemo Carruth-ers.” Giles was thereupon arrested, and advised of his Miranda rights. According to Barfield, Giles stated to him that he had been shooting basketball at Blackburn Junior High School, and that “he had been by the cleaners at approximately eleven o’clock that morning.”
Although the police searched for Jerry Washington and inquired as to his whereabouts, they were never able to locate him.
The first assignment of error was that the State failed to disclose to the appellant the Jackson Police Department’s fruitless search for Jerry Washington.
After Officer Stubblefield had testified, the appellant moved for a directed verdict or in the alternative for a mistrial on the ground that the State had failed to disclose such evidence. The trial court, in overruling both motions, said:
“Jerry Washington is the man that this defendant said he knew. He certainly would have known where his location was.
“It is obvious that the police department put out an all-points-order in an effort to try to locate a Jerry Washington.
“There is nothing exculpatory in any of the testimony given about a Jerry Washington, and I’ll overrule both motions, the motion for a mistrial and the motion for a directed verdict.” (Emphasis added).
Donald Ates of the Ballistics Division of the Jackson Crime Laboratory, testified as an expert on ammunition. He had carefully compared the one 38-caliber slug recovered in good condition at the scene of the crime with a 38-caliber bullet taken from Allen’s dresser drawer. Each had identical casting die marks indicating that they both had a common origin. Ates further testified:
“The cast reload ammunition from Mr. Allen’s house, and one of the projectiles, the one that was in good shape, that a comparison could be made on, had the same microscopic physical characteristics, indicating they were molded in the same mold.”
Appellant argued also that the court committed error in not requiring the State to furnish a copy of Ates’ written report to the appellant before trial. When the appellant made his motion for a directed verdict or in the alternative a mistrial, the court overruled both motions but advised defense counsel that he would give him 30 minutes to examine the report. Defense counsel admitted that he had seen the 38-caliber bullets, the physical evidence, but had not seen the report until Ates testified.
The court was correct in overruling these motions because this report was not of an exculpatory nature. Moreover, the court gave the appellant 30 minutes to examine Ates’ report before cross-examining him.
*123 Appellant contends that the recovery of the billfold of Bemo Carruthers from the right rear pocket of appellant was the result of an illegal search and should not have been admitted into evidence.
We think that the court was correct in refusing to suppress this evidence. The facts known to Barfield and Taylor at the time they went to Giles’ home were sufficient to constitute probable cause for arresting and searching him at that time. Since probable cause existed for an immediate arrest and search, it makes no difference that Barfield waited a few minutes, until Giles was at the city jail, to search him.
From the evidence adduced, the jury was justified in finding the appellant guilty beyond a reasonable doubt and to a moral certainty after excluding every other reasonable hypothesis consistent with innocence.
The conviction and sentence are, therefore, affirmed.
Affirmed.
RODGERS, P. J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.